EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ORLANDO ZENGOTITA, EDUARDO PÉREZ MÉNDEZ y FERNANDO DE JESÚS, acusados y apelantes.

*Número:* CR-62-409      *Resuelto:* 29 de enero de 1964

*Héctor Lugo Bougal,* y *Edgardo Llorens,* abogados de los apelantes; *J. B. Fernández Badillo, Procurador General,* e *Irene Curbelo, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

PER CURIAM: Los acusados apelantes fueron convictos por el delito de robo por un tribunal de derecho. Como único error señalan en apelación que la prueba fue insuficiente en derecho para sostener una convicción, invocando el Art. 253 del Código de Enjuiciamiento Criminal al efecto de que no procede la convicción por declaración de un cómplice a menos que ésta sea corroborada por otra prueba que, por sí misma y sin la ayuda del testimonio del cómplice, tienda a demostrar la relación del acusado con la comisión del delito, no siendo suficiente dicha corroboración si sólo prueba la perpetración del delito.

La prueba del Pueblo en cuanto al robo en sí consistió del testimonio del perjudicado y del testimonio de un chofer llamado Félix López Merced. La contención de los apelantes es que Félix López Merced era un cómplice y que su declaración, sin ser corroborada, no era suficiente para sostener una convicción. Si bien es cierto que el récord contiene hechos que podrían dar lugar a la inferencia de que

el testigo López Merced era o podía ser cómplice, sin embargo, según la Sala sentenciadora creyó su testimonio, la conclusión de derecho de que no era tal cómplice tiene apoyo en el récord y no habremos de alterarla.

El perjudicado declaró que mientras él subía por el Vigía hacia el Hotel Ponce Intercontinental pasó una curva y encontró que la carretera estaba bloqueada por un automóvil. Había cuatro hombres allí y él creyó que el carro ese tenía algún problema. Un hombre se le acercó por la ventanilla del lado del guía y el testigo le preguntó qué pasaba. Inmediatamente aquél le dio un golpe. No perdió el conocimiento pero quedó aturdido. La persona abrió la puerta, se metió adentro y le cayó encima. Esa persona empezó a registrarle los bolsillos. Otra persona entró por el lado derecho y arrancó las llaves del carro. El testigo pudo salir del vehículo y esa otra persona dio la vuelta al carro, le agarró por el reloj, le torció la mano y le quitó el reloj de la mano. Declaró que solamente dos personas lo atacaron que fueron las que se le acercaron físicamente. Al testigo le faltaron las dos carteras que tenía con veinte a treinta dólares, el reloj que le llevó esa otra persona y le faltó una pluma. Cuando salió del carro luchó con uno de ellos, le dio un golpe en la cara y lo tumbó; gritó entonces pidiendo ayuda y el individuo corrió hacia el carro y los otros corrieron hacia la carretera.

Este testigo en momento alguno pudo identificar en corte a los acusados como las personas que lo atacaron a pesar de todos los esfuerzos en tal sentido. Dijo que posteriormente se enteró que el testigo López Merced era el chofer del vehículo que estaba allí y que éste no lo atacó. Que cuando él gritó por ayuda López Merced se montó en el carro y se fue y los demás se fueron corriendo. En cuanto a la otra persona que al igual que el chofer López Merced manifestó el testigo que no lo había agredido y se quedó detrás del vehículo como a veinte pies, la describió el testigo como la

más pequeña del grupo. Dijo que el chofer en momento alguno le prestó ayuda ni lo defendió.

Refiriéndose al coacusado Eduardo Pérez Méndez, declaró el testigo que esa noche en el Cuartel la policía se lo presentaron y que el muchachito admitió que estaba allí pero que él no había hecho nada. (¹)

La declaración de López Merced en síntesis fue al efecto de que él era un chofer público que de noche trabajaba un carro con tablillas privadas; que esa noche estaba frente al Bar "Paradise", salieron de ahí los tres coacusados y se montaron en el carro y uno de ellos, Fernando De Jesús, le dijo que los llevara hacia el Hotel Intercontinental. En el camino vieron el carro del perjudicado y De Jesús le dijo que tratara de pasarle y más arriba De Jesús le ordenó pararse porque tenía que decirle unas cosas el que venía en el carro de atrás. El testigo trató de alinearse pero quedó en el medio porque habían otros carros y entorpecía el camino. Los tres se tiraron del carro aunque distinto a lo declarado por el agredido, sostuvo que él se quedó dentro y que miraba por el cristal de atrás. Puntualizó que eran De Jesús y Zengotita los atacantes y que el jovencito Eduardo Pérez no tomó parte en el asalto. Que el americano perjudicado logró salir del carro y le dio una "gasnatada" a Zengotita y lo tiró al suelo. Ahí el americano gritó y el testigo se acobardó, prendió el carro y se fue pero a Zengotita le dio tiempo a montarse en el carro. No sabe qué hicieron los demás. Llevó a Zengotita a la Barriada Dr. Pila y le pagó un dólar. Cuando bajaba con Zengotita se encontró con la patrulla de la policía y pasó sin decirles nada a éstos. Después que dejó a Zengotita volvió al pueblo y se paró de nuevo frente al Paradise. Allí estaban De Jesús y Pérez Méndez. De Jesús le dijo que lo llevara a otro sitio a llevarle un sandwich a su mujer y se fueron los tres. Mientras

---

(¹) Durante el juicio todos siempre se refirieron al coacusado Pérez Méndez como el muchachito o el jovencito. Ello indica que era muy joven o el más joven de todos los acusados.

esperaban a De Jesús que entró en la casa llegó la policía y se llevó al testigo y a Pérez Méndez que estaban en el carro. Manifestó que cuando los acusados se le montaron en el carro nada oyó o vio que le indicara que podían ir a realizar un acto como éste. Declaró también que el americano perjudicado tenía relaciones y andaba con una querida o corteja de De Jesús.

Si bien el perjudicado no pudo identificar en el juicio a sus atacantes éstos fueron identificados por el testigo Félix López Merced, a quien aparentemente el Tribunal dio crédito. No hay base para alterar la convicción de los coacusados Zengotita y De Jesús. Por otra parte, la única declaración que conectó al coacusado Pérez Méndez fue la de Merced y Merced declaró que Pérez Méndez no atacó. Si se acepta la admisión de Pérez en el Cuartel al efecto de que él estaba en el sitio, hay que aceptar también la parte exculpatoria de que no hizo nada. La convicción de Pérez Méndez podría sostenerse si el récord demostrara que el robo se debió a un plan preconcebido con tal fin y que Pérez por lo tanto formaba parte de una conspiración. No hay base suficiente en el récord para dejar establecida tal conspiración previa. El propio López dijo que nada indicaba que los acusados estuvieran en un plan delictivo al montársele en el carro, y por otra parte el récord señala que pudo haber habido un móvil para la agresión al perjudicado por las relaciones de éste con la querida o mujer de De Jesús, único de los acusados que ordenó ir hacia el Hotel Intercontinental, ordenó que se detuviera el vehículo al alcanzar al del perjudicado y el único que manifestó que él tenía algo que decirle a éste. En efecto, el testigo López Merced dijo que no vio a los atacantes cogerle nada al perjudicado. La Sala sentenciadora aparentemente creyó al perjudicado sobre este extremo.

En *Pueblo* v. *Aponte*, 83 D.P.R. 511 (1961), el Juez Asociado Sr. Blanco Lugo expresó (pág. 519):

Distinto al caso de *Aponte*, en el de autos no hay prueba

suficiente para concluir en derecho la existencia de un plan a conspiración previa para cometer robo.

"La mera presencia durante la comisión de un delito no es suficiente por sí sola para sostener una convicción, [citas]; pero este hecho puede considerarse conjuntamente con las otras circunstancias que rodean el hecho delictivo a los fines de la determinación de responsabilidad, *People* v. *Carlson*, 2 Cal. Rptr. 117 (1960). No es indispensable, pues, que el acusado ejecute personalmente el acto delictivo y basta con su presencia pasiva, siempre que su responsabilidad como coautor pueda establecerse por actos anteriores, o como el resultado de una conspiración en que participó, [citas], o de un designio común, [cita]. Bajo los hechos reseñados anteriormente forzoso es concluir que tanto Aponte González como Colón Peraza responden como coautores no obstante su participación pasiva en el hecho físico del despojo violento de que fue víctima el perjudicado." (Citas.)

*Se confirmarán las sentencias condenatorias dictadas por la Sala de Ponce del Tribunal Superior en 4 de septiembre de 1962 en cuanto a los apelantes Orlando Zengotita y Fernando De Jesús. Se revoca la sentencia en cuanto al apelante Eduardo Pérez Méndez por ser insuficiente en derecho la prueba para una convicción de robo, y se le absuelve.*